**ORIGINAL**

FILED
DEC 3 2013
U.S. COURT OF
FEDERAL CLAIMS

Receipt No. 076001

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Preferred Builders Group, LLC, formerly known as DRS Veteran Enterprises, LLC<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 13-951 C<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Preferred Builders Group, LLC, ("Plaintiff" or "Preferred Builders") by the undersigned counsel alleges as follows: [1]

## NATURE OF THE CASE

1. Preferred Builders contests the Department of Veterans Affairs ("VA") decision to terminate for default Contract No. VA246-13-C-0014, Storm Water Runoff ("Contract"). This action seeks conversion of a termination for default into a termination for convenience.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1491 and the Contract Disputes Act of 1978, ("CDA"), 41 U.S.C. § 601 et seq. This action is a timely appeal pursuant to the CDA and the Contracting Officer's final decision dated September 11, 2013 and subsequently revised on October 11, 2013.

---

[1] Plaintiff was formerly known as DRS Veteran Enterprises, LLC. On September 30, 2013, DRS Veteran Enterprises, LLC changed its name to "Preferred Builders Group, LLC." (Exhibit 6, Name Change Certificate)

-1-

## PARTIES

3.     Preferred Builders Group is a Limited Liability Company existing under the laws of West Virginia, United States, with a principal address of P.O. Box 994 Beaver, WV 25813-0994.

4.     Defendant, the United States of America, is and at all times herein mentioned was acting by and through the Department of Veterans Affairs ("VA").

## GENERAL ALLEGATIONS

### The Contract

5.     On or about March 27, 2013, the VA contracted with Preferred Builders to construct an 18 ft. catch basin to collect rainwater runoff and replace a 35 ft. section of damaged storm sewer pipe leading to this new catch basin ("Contract"). (Exhibit 1) The contract price totaled $70,829.37

6.     The Contract did not include any drawings.

7.     The Contract included a Statement of Work, which called for (i) excavation and removal of a damaged storm sewer pipe; (ii) replacement of the storm sewer pipe with two 35-inch diameter plastic side-by-side storm sewer pipes; (iii) backfill excavated areas and restore a gravel road over the section of damaged storm sewer pipe; (iv) construct a 5-ft. headwall approximately 20 ft. wide; and (v) construct an 18-foot long catch basin. (Exhibit 1, pgs. 4-5)

### VA's Superior Knowledge of Concealed Sanitary Sewer Line

8.     Prior to Contract award, the VA did not advise bidders, including Preferred Builders, that a sanitary sewer line (approx. 80 years old and made of clay tile) exited within the excavation area.[2]  There were no visible signs of this sanitary sewer line. Several years ago, the VA

---

[2] The sanitary sewer line (waste) is not to be confused with the storm sewer line (rainwater).

covered the sanitary sewer line and a manhole leading too it with several feet of compacted fill. Another manhole was concealed in brush.

9. The VA also knew that the sanitary sewer line was damaged, but did not share this information with any of the bidders. Specifically, upon information and belief, several years prior to Contract award, VA personnel installed a fence over the sanitary sewer line approximately 60 yards upstream from the construction site along Hart Street, Beckley, Raleigh County WV. In doing so, the sanitary sewer line was damaged. Soil at that location has been intermittently saturated with sewage. VAMC personnel were aware prior to Contract award of intermittent leakage and standing water from the damaged sanitary sewer line at that location.

10. The municipal sanitary sewer authority is the Beckley Sanitation Board ("BSB"). BSB operates as the underground utility in Beckley, West Virginia pursuant to West Virginia Code §24C-1-3. Upon information and belief, the VA did not advise BSB that it had buried the manhole for the sanitary sewer line or that it damaged the sanitary sewer line.

11. A major waterline supplying VAMC Bldgs. 8, 14, and 15 also existed within the construction site. The VA did not inform bidders of the existence and location of the water line either, nor could bidders determine this based on a pre-award walkthrough of the project.

**Discovery of Concealed Sanitary Sewer Line**

12. Defendant issued a Notice to Proceed on April 3, 2013.

13. Preferred Builders provided all material submittals in April and early May 2013.

14. Before starting work, on May 14, 2013, Plaintiff's subcontractor / excavator notified BSB under the "One-Call System." Established under West Virginia Code §24C-1-3, the One-Call System allows a contractor to request BSB to mark the location of any of its underground lines.

If BSB does not do so within a certain time period, BSB must absorb the cost of repairing damaged lines "except for damage caused by the willful or intentional act of the excavator."

15. On May 14, 2013, Preferred Builders' excavation subcontractor requested BSB under the One-Call System to mark its underground lines prior to the start of excavation.

16. On May 16, 2013, BSB stated that there was "NO SEWER LINE IN AREA OF CONSTRUCTION." (Exhibit 2, p. 3) At no time prior to excavation did the VA inform Preferred Builders that BSB was mistaken.

17. Given BSB's response to the One-Call System, as well as the VA's failure to mention the concealed manholes and sanitary sewer line in the bid documents, Preferred Builders reasonably assumed that there were no underground sanitary sewer utilities in the area of construction. Preferred Builders proceeded with excavation under that assumption.

18. Excavation activities began on May 17, 2013.

19. On July 29, 2013, Preferred Builders discovered one of the concealed manholes leading to the underground sanitary sewer line. The other concealed manhole was not discovered until late August when BSB uncovered it trying to find their line.

20. On August 6, 2013, Preferred Builders encountered saturated sewage in the excavation area.

21. On August 8, 2013, Defendant informed BSB that it would pay Preferred Builders to repair the sanitary sewer line. A few hours later, Defendant told Preferred Builders to standby and directed BSB to repair the sanitary sewer line. Then, that same day, Defendant sent Preferred Builders a letter instructing it to repair the line instead at no cost to the Government.

22. On August 9, 2013, Preferred Builders responded to the confusing directions and objected to Defendant's instruction that Preferred Builders repair or replace the sanitary sewer

line at its own cost. Preferred Builders recommended that "the Veterans Administration rescind its misplaced directive [to replace line at no cost] and allow the proper course of action to occur." Preferred Builders also requested that the contract be extended by sufficient time to complete replacement of the sanitary sewer line.

23. Preferred Builders personnel repeatedly asked VA Engineering and Contracting when the Contracting Officer's would respond to Preferred Builders' request that the VA reconsider its position regarding repair of the sanitary sewer line. VA contracting personnel consistently informed Preferred Builders that the determination was forthcoming and Preferred Builders should remain on standby.

24. The Contracting Officer remained silent between August 9, 2013 and September 10, 2013. She did not respond to Preferred Builders' request that she reconsider her position and retract the directive that Preferred Builders repair the sanitary sewer line at its own cost. Nor did she warn Preferred Builders of a possible termination for default by issuing a cure notice, show cause notice, or other means.

## COUNT I
### (Grounds for Default Termination Are Improper)

25. Plaintiff repeats the allegations contained in Paragraphs 1 through 24 as if fully stated herein.

26. Without first issuing a show cause or cure notice, on September 11, 2013, the Contracting Officer terminated the Contract for default based upon Preferred Builders' alleged failure to make progress. The notice of termination cited the following additional reasons for termination:

- Failure to provide proper shoring of the trench;
- Failure to provide a shoring plan;

- Failure to install culverts in accordance with plans and specifications (alleging that culverts were installed backwards);
- Failure to properly support the water line;
- Failure to grade the area properly;
- Failure to properly compact the soil in accordance with VA Master Specifications;
- Failure to confine operations to the construction site;
- Failure to protect the trench from washout;
- Failure to protect existing utilities and property of a third party;
- Failure to prosecute the work in a timely manner;
- Failure to obtain proper licenses and permits and properly coordinate the work;
- Failure to repair damages allegedly caused by Preferred Builders, including the break in the waterline and the crushing of the sanitary sewer line; and
- Failure to follow mandatory OSHA rules.

(Exhibit 3)

27. On September 18, 2013, Plaintiff explained in detail why each of the above allegations does not support a termination for default. (Exhibit 4) The VA still refused to rescind its termination for default.

28. On October 11, 2013, the Contracting Officer revised her final decision on the termination for default to include CDA appeal rights. (Exhibit 5)

29. The termination for default failed to give due consideration to the defective specifications, which adversely impacted Preferred Builders' performance. This includes, but is not limited to, the specification's failure to note (1) the existence of the concealed sanitary sewer line; (2) the location of the sanitary sewer line; (3) Defendant's nondisclosure of the sanitary sewer line and concealment of the manholes; (4) long-standing leakage of sewage at the location of prior fence work performed by Defendant adjacent to Hart Street; and (5) the existence and

location of a major waterline crossing the excavation site. Prior to Contract award, Preferred Builders was unaware of these material facts. Defendant knew or should have known of this. Defendant's nondisclosure materially affected performance of the contract and does not provide a basis for terminating the contract for default.

30. The sanitary sewer line also constitutes a differing site condition, for which Preferred Builders was entitled to additional compensation and extension of time sufficient to replace or repair the sanitary sewer line.

31. The termination for default failed to give due consideration to the fact that performance of the Contract was interrupted, suspended and delayed as a result of the differing site condition, and the adverse impact on Preferred Builders' performance that resulted from such differing site condition.

32. Moreover, the VA failed to produce any evidence that Preferred Builders actually damaged the sanitary sewer line. VA also failed to provide any evidence of the location of the damage to the sanitary sewer line; the cause of the damage; and what measures must be taken to repair it, if any.

33. Alternatively, even if Preferred Builders damaged the sanitary sewer line, such damage is excused by the poor condition of the line (it is approximately 80 years old) and/or Defendant's failure to disclose the existence and location of this line.

## COUNT II
**(VA's Lack of Clear Direction How to Proceed Renders Default Invalid)**

34. Plaintiff repeats the allegations contained in Paragraphs 1 through 33 as if fully stated herein.

35. The VA has yet to produce any evidence as to the location of the alleged damage to the sanitary sewer line or the cause of such alleged damage. Moreover, the VA has not advised

Preferred Builders what work must be done to satisfy the VA's concerns about the allegedly damaged sanitary sewer line.

36. Given this lack of direction, it was arbitrary and capricious for the VA to terminate the Contract for default.

## COUNT III
### (Cardinal Change Renders Default Invalid)

37. Plaintiff repeats the allegations contained in Paragraphs 1 through 36 as if fully stated herein.

38. The replacement of the broken sanitary sewer line necessarily requires removing work already performed, and quite possibly, remediating years of sewage leakage percolating into the soil of the work area. The leakage constitutes a serious health risk. The additional environmental work required to test, remediate and replace the concealed and undisclosed leaking sanitary sewer line is outside the scope of the contract and constitutes a cardinal change.

39. The VA therefore did not have the right to terminate the Contract for Default given the fact that the VA was asking Preferred Builders to perform work that would constitute a cardinal change to the Contract.

## COUNT IV
### (Termination Improper Due to the Lack of a Show Cause or Cure Notice)

40. Plaintiff repeats the allegations contained in Paragraphs 1 through 39 as if fully stated herein.

41. Pursuant to 48 CFR 49.402-3, before terminating a contract the Government is required to issue a Show Cause Notice if practicable.

42. It was practicable, necessary and prudent for the Contracting Officer to issue a Cure Notice or a Show Cause Notice before terminating the contract for default.

43. The Contracting Officer did not issue a Show Cause or a Cure Notice before terminating the Contract for default on September 11, 2013.

44. The VA's failure to issue a Show Cause or Cure Notice renders the termination for default invalid because (1) there was time to issue a Show Cause, (2) Preferred Builders did not abandon the project, and (3) Preferred Builders could have completed all the work, including repairs, before the contract completion date.

45. The VA's failure to issue a Show Cause or Cure Notice renders the termination for default improper, arbitrary and capricious.

### COUNT IV
### (Termination for Default Done Without Good Faith)

46. Plaintiff repeats the allegations contained in Paragraphs 1 through 45 as if fully stated herein.

47. The termination for default has no reasonable basis in law or fact.

48. The Contract included an implied covenant of good faith and fair dealing.

49. The VA breached the covenant of good faith and fair dealing by lack of diligence, negligence, failure to cooperate, failure to disclose superior knowledge, by issuance of defective plans and specifications, by failure to issue a cure notice or notice to show cause prior to termination and by insistence that Preferred Builders perform work outside the scope of the contract constituting a cardinal change.

50. The VA breached the covenant of good faith and fair dealing by terminating the contract for default where Defendant was responsible for contaminating the construction site with sewage and thereby impeding performance.

51. As a result of Defendant's failure to cooperate and its breach of the covenant of good faith and fair dealing, performance of the contract was delayed and suspended. Preferred

Builders was injured by suspension and delay of contract performance, by loss of bonding capacity, and by loss of profits it would have earned on the Contract.

52. The termination for default failed to give due consideration to Defendant's breach of the duty of good faith and fair dealing and the adverse impact on Preferred Builders' performance that resulted from such breach. The termination for default was therefore wrongful, arbitrary and capricious.

## COUNT V
### (The VA Abused its Discretion When Terminating for Default)

53. Plaintiff repeats the allegations contained in Paragraphs 1 through 52 as if fully stated herein.

54. Defendant alleges that Preferred Builders broke the sanitary sewer line without evidence that the sanitary sewer line was broken within Preferred Builders' construction site or that Preferred Builders caused any such breakage.

55. Preferred Builders did not cause leakage from the sanitary sewer line.

56. At the time of termination, Preferred Builders was mobilized with equipment, supplies and materials staged for construction. Further Preferred Builders offered to complete the sanitary sewer line replacement in two weeks at a cost of approximately $28,975.00, and could have completed the work at a lower cost and sooner than any replacement contractor.

57. As of the date of termination, Preferred Builders was willing and ready to do everything possible to overcome the government's defective design, defective specifications, and the differing site conditions and to perform the remaining contract work.

58. In terminating the contract, the VA did not determine whether Preferred Builders could complete the work before a replacement contractor.

59. As of the date of termination, Preferred Builders was not in default of the Contract.

60. To the extent Preferred Builders was in default, such default is excused by Defendant's breaches and defaults as set forth herein.

61. Defendant acted unreasonably and without just cause, arbitrarily and capriciously in terminating the Contract for default knowing that the field conditions were not the fault or responsibility of Preferred Builders.

62. The termination for default failed to give due consideration to the defective design, defective specifications, differing site conditions, excusable causes of delay including cardinal change, Defendant's breach of the covenant of good faith and fair dealing, the likelihood that a replacement contractor could complete the project sooner or at a lower cost than Plaintiff, and further failed to give due consideration to the adverse impact on performance that resulted from factors that were the fault and responsibility of Defendant.

63. The Contracting Officer abused her discretion in terminating the Contract.

64. The Termination for Default is therefore improper, arbitrary and capricious.

## **PRAYER FOR RELIEF**

The reasons cited by Defendant for termination are without merit and do not justify termination for default. The default termination did not comply with the requirements of the Federal Acquisition Regulations, including FAR 49.402-3 (Procedure for Default) and FAR 52.249-10 (Default). The termination for default was improper and without cause.

**WHEREFORE,** Preferred Builders requests the Court to find that the VA's termination of the Contract for default was wrongful, and order the termination for default be converted to a termination for the convenience that will effectively result in the reimbursement to Preferred Builders of all of the costs it incurred in the performance of the project, plus overhead and profit;

and that the Court enter judgment against Defendant awarding Preferred Builders costs, and attorneys' fees allowed by law, and such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ John M. Manfredonia*

John M. Manfredonia
Manfredonia Law Offices, LLC
120 Piermont Road | Cresskill, NJ 07626
t: 201-227-1722
f: 201-227-1936
email: jmm@manfredonialaw.com

Dated: December 2, 2013